## Union National Bank & Trust Co. v. Geyer Auction, Inc.

*Irwin S. Rubin*, for plaintiff.
*Kendall D'Andrade*, for defendant.

GROSHENS, J., November 25, 1958.—This is an action in replevin. Defendant has filed preliminary objections demurring to the complaint which sets forth the facts substantially as follows:

Clement F. Myers, hereinafter referred to as Myers, was the certificated owner and possessor of a 1953 Chevrolet station wagon. On February 2, 1955, Myers applied to the Bureau of Motor Vehicles for the issuance of a duplicate certificate of title for the reason that he had lost the original certificate, when in fact he had possession of the original certificate. Sometime between February 2, 1955, and March 7, 1955, a duplicate certificate of title was issued to Myers. On March 2, 1955, Myers borrowed $1,182.50 from plaintiff and used as collateral the original certificate of title. On March 3, 1955, plaintiff applied to the Bureau of Motor Vehicles for a duplicate certificate of title evidencing the encumbrance of the loan made to Myers, and such a duplicate was duly issued to plaintiff as provided by law. Plaintiff did not require Myers to deliver up possession of the station wagon. On March 3, 1955, plaintiff filed in the office of the Prothonotary of Montgomery County a financing statement covering the station wagon, which was duly recorded by the prothonotary. On January 18, 1957, Myers borrowed $518.86 from the Harleysville Na-

tional Bank and Trust Company, hereinafter referred to as Harleysville Bank, and used as collateral the duplicate certificate of title for the station wagon which he had wrongfully obtained in February of 1955.

On January 22, 1957, the Secretary of Revenue issued to the Harleysville Bank a duplicate certificate of title evidencing the encumbrance of the loan made to Myers. This encumbrance was later satisfied on the duplicate certificate of title, and Myers made another loan at the Harleysville Bank. Another duplicate certificate of title was issued evidencing an encumbrance of $750.90 in favor of the Harleysville Bank. On March 2, 1957, the Harleysville Bank filed a financing statement covering the station wagon in the office of the prothonotary. On September 25, 1957, the encumbrance of $750.90 was satisfied on the duplicate certificate of title in possession of the Harleysville Bank, and on the same day Myers signed that duplicate certificate of title in favor of defendant and sent it to the Bureau of Motor Vehicles for transfer purposes. On the same day, September 25, defendant made a loan of $533.71 at the Harleysville Bank to be secured by the title to said station wagon, and the Secretary of Revenue issued a further duplicate certificate of title evidencing the encumbrance of $533.71 in favor of Harleysville Bank.

On November 9, 1957, plaintiff seized the station wagon while in the possession of Myers, who was still indebted to plaintiff on the original loan. Defendant thereupon demanded possession as the certificated owner, which was the first knowledge of plaintiff of the above recited actions of Myers. On November 20, 1957, defendant forcibly seized the station wagon, which it refused to return to plaintiff. In the meanwhile, defendant sold the station wagon. The last loan made by the Harleysville Bank had been paid. The

parties have agreed that the determination of this action of replevin shall be based upon the issue as to whether plaintiff was entitled to possession of the station wagon on December 6, 1957, the date on which plaintiff was prepared to file this action, which was withheld at defendant's request.

The questions before us may be stated as follows:

First: Does the notation of an encumbrance upon a certificate of title to a motor vehicle as provided in The Vehicle Code constitute adequate notice?

Second: Does a perfected security interest in a motor vehicle require the filing of a financing statement under the Uniform Commercial Code?

Third: Does the improper issuance of a duplicate certificate of title render the original certificate of title void when the original certificate of title has been pledged to an innocent lender?

We will consider the questions in the order given.

The Vehicle Code of May 1, 1929, P. L. 905, as amended, sets up an elaborate and comprehensive system for the issuance of certificates of title for motor vehicles, for the central filing of such certificates of title and for the procedure to be followed to perfect security interests in motor vehicles.

Article II, sec. 202(b), as amended, 75 PS §32, provides, inter alia, that when a motor vehicle is used as collateral for a loan after a certificate of title has been issued, the lien thereof may be recorded by making application for a duplicate certificate of title on a form prescribed and furnished by the Secretary of Revenue.

Article II, sec. 203(b), 75 PS §33, provides, inter alia, that the outstanding certificate of title showing a lien shall be adequate notice to the world that a lien against the motor vehicle exists, and that failure to transfer possession of the vehicle shall not invalidate the lien.

It is clear the General Assembly intended an exclusive recording system for motor vehicle titles and for legally adequate notice of motor vehicle liens.

The Uniform Commercial Code of April 6, 1953, P. L. 3, as amended, does not apply to perfecting liens or encumbrances or "security interests" in motor vehicles.

Section 9-302(2)(b), 12A PS §9-302, provides, inter alia, as follows:

"(2) The filing provisions of this Article do not apply to the assignment of a perfected security interest, or to a security interest . . .

"(b) in property subject to a statute of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

"Compliance with any such statute is equivalent to filing under this Article."

It is clear the General Assembly did not intend that motor vehicles should fall within the terms or the purview of the Uniform Commercial Code.

Therefore, the filing of the financing statement covering the station wagon in the prothonotary's office by plaintiff was surplusage, and not constructive notice to the world of its encumbrance.

There but remains the third question, namely: Does the improper issuance of a duplicate certificate of title render the original certificate void when the original certificate of title has been pledged to an innocent lender?

This question must be answered in the negative. No reported case in which this question has been decided has been cited by counsel and our research has not revealed any precedent.

In the forms provided by the Department of Revenue for the issuance of a duplicate certificate of title

to evidence an encumbrance, it is noted the original certificate of title must accompany the form. Before Myers made the loan from plaintiff, Myers had wrongfully acquired a duplicate certificate of title. The issuance of the duplicate to Myers did not render the original certificate void in the hands of Myers when he gave it to the innocent plaintiff as collateral for a loan. Plaintiff was the first victim of Myers' mistake or fraud, as the case may be. Plaintiff received the original from Myers and sent it to the department as required to secure the duplicate certificate with the notation of the encumbrance. Plaintiff had no knowledge of the mistake or fraud, and plaintiff had no way to detect it except through the department. Plaintiff was justified in relying upon the documents and actions of the department. Plaintiff was not required under The Vehicle Code to take possession of the station wagon. Plaintiff was the first innocent victim of the fraud or mistake of Myers. It was not through any fault of plaintiff that Myers was able to victimize defendant.

We see no reason why defendant, the second victim, should now throw the loss on plaintiff.

Where two innocent persons are the victims of the fraud or mistake of a third person, and neither victim could have been reasonably expected to take steps to detect or to prevent the fraud or mistake, the victim who first acquired the muniments of title should prevail, for precedency in time, where the equities are in other respects equal, gives priority in law.

Therefore, the preliminary objections and demurrer to complaint must be dismissed.

And now, November 25, 1958, it is ordered, adjudged and decreed that the preliminary objections and demurrer be dismissed, and defendant granted 20 days to answer on the merits.